UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| **Plaintiff,** | **1:22-cv-03216 (      )** |
| **-against-** | |
| **MOSHE STRUGANO and RINAT GAZIT,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Plaintiff United States Securities and Exchange Commission (the "SEC"), for its

Complaint against Defendants Moshe Strugano ("Strugano") and Rinat Gazit ("Gazit")

(collectively, "Defendants"), alleges as follows:

**SUMMARY**

1.      This action involves insider trading by Strugano in the securities of U.S.

Geothermal, Inc. ("U.S. Geothermal") based on material, nonpublic information provided to him

by his close, personal friend, Gazit, before the January 24, 2018 public announcement that Ormat

Technologies, Inc. ("Ormat") had agreed to acquire U.S. Geothermal (the "Announcement").

2.      Gazit worked as the Head of Mergers and Acquisitions for Ormat, played a

critical role in negotiating Ormat's acquisition of U.S. Geothermal, and possessed material,

nonpublic information concerning the U.S. Geothermal acquisition.  In breach of the duty that

she owed to Ormat, Gazit tipped this information to her close friend Strugano.

3.      On December 19, 2017, Gazit attended a meeting of Ormat's board of directors

("Ormat's Board"), during which Ormat's Board approved the U.S. Geothermal acquisition.

Immediately after, Gazit sent a coded WhatsApp message to Strugano notifying him of the

approved acquisition.  Less than one minute later, Strugano made repeated attempts to contact

his broker, and within eight minutes he placed an order to buy U.S. Geothermal stock.

4.      From December 19, 2017 through January 18, 2018, Strugano purchased a total of

740,650 U.S. Geothermal shares.  After the Announcement on January 24, 2018, the price of

U.S. Geothermal stock closed at $5.39 per share, an increase of $1.15, or 27.1%, from its

previous day close.  Over the course of the next two months, Strugano sold all of his U.S.

Geothermal shares and made illegal profits of approximately $1.2 million.

5.      Strugano attempted to hide his unlawful trading by instructing his broker to

"*delete all messages*" concerning his U.S. Geothermal trades.  He also concealed that he knew

his friend Gazit worked for Ormat when the Switzerland-based financial institution (the "Bank")

that Strugano had used to purchase his U.S. Geothermal securities inquired about his trades.

Strugano later "unfriended" Gazit on Facebook to further distance himself from Gazit.

6.      By engaging in the conduct described in this Complaint, Defendants violated, and

unless restrained and enjoined will continue to violate, Section 10(b) of the Securities Exchange

Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R.

§§ 240.10b-5].

**NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

7.      The SEC brings this action pursuant to the authority conferred upon it by

Exchange Act Sections 21(d) and 21A [15 U.S.C. §§ 78u(d); 78u-1].

8.      The SEC seeks a final judgment: (a) permanently enjoining Defendants from

violating the federal securities laws by engaging in the transactions, acts, practices, and courses

of business alleged in this Complaint; (b) ordering Strugano to disgorge any ill-gotten gains he

received with prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5) and

(d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Defendants to pay civil money

penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; (d) ordering an officer and

director bar against Gazit pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. §§ 78u(d)(2)];

and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21A, and

27 of the Exchange Act [15 U.S.C. §§ 78u(d); 78u-1; 78aa].  Defendants, directly and indirectly,

have made use of the means or instrumentalities of interstate commerce, of the mails, or of the

facilities of a national securities exchange in connection with the transactions, acts, practices, and

courses of business alleged herein.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(c)(3) and Section

27(a) of the Exchange Act [15 U.S.C. § 78aa(a)].  Defendants are foreign citizens, who live in

Israel, and can be sued in any federal district court.  Certain of the acts, practices, transactions,

and courses of business alleged in this Complaint occurred within this District, including

executions of securities transactions through at least one broker-dealer located in this District,

and involve a security listed on a stock exchange located within this District.

## DEFENDANTS

11.     **Strugano**, age 52, is an Israeli citizen who resides in Caesarea, Israel.  At all

times relevant to the facts herein, Strugano was an attorney and the owner of Moshe Strugano &

Co., a Tel Aviv, Israel-based law firm.

12.     **Gazit**, age 52, is an Israeli citizen who resides in Tel Aviv, Israel.  At all times

relevant to the facts herein, Gazit was the sole shareholder of Gayanona Ltd. ("Gayanona"), an

Israel-based limited liability company.  From at least March 2015 until August 18, 2021, Gazit

worked as an independent contractor for Ormat Systems Ltd., a wholly-owned subsidiary of

Ormat, providing merger and acquisition services for Ormat.  Gazit's title was and she publicly

described herself as the Head of Mergers and Acquisitions for Ormat.  In at least 2020 and 2021,

Gazit served on the boards of directors for companies whose securities were publicly traded on

the New York Stock Exchange.  Gazit still works in the mergers and acquisitions business and,

upon information and belief, continues to be in contact with Strugano.

## RELEVANT ENTITIES

13.     **U.S. Geothermal** was a geothermal energy company headquartered in Boise,

Idaho.  In April 2018, Ormat acquired all assets of U.S. Geothermal.  Before its acquisition, U.S.

Geothermal's common stock was listed on the NYSE American exchange and traded under the

symbol "HTM."

14.     **Ormat** is an international supplier of alternative and renewable geothermal

energy.  Ormat is headquartered in Reno, Nevada and was founded and maintains offices in

Yavne, Israel.  Ormat's common stock is dually listed on the New York Stock Exchange, trading

under the symbol "ORA," and the Tel Aviv Stock Exchange.

## FACTS

A.     **Gazit's Position at Ormat**

15.     From at least March 2015 until she was terminated on August 18, 2021, Gazit

served as the Head of Mergers and Acquisitions for Ormat.

16.     In March 2015, Gazit and her company Gayanona entered into an agreement (the

"Agreement") with Ormat Systems Ltd., a wholly-owned subsidiary of Ormat, to provide

services relating to mergers and acquisitions of companies in the geothermic energy and energy

storage fields.  Gazit's job responsibilities included, among other things, identifying potential

mergers and acquisitions for Ormat, negotiating the terms of any agreements with target companies, and managing the due diligence and closing process of such transactions.

17.     At all times relevant to facts herein, Gazit was bound by Ormat's policies and procedures, including those policies relating to insider trading and safeguarding material, nonpublic information.  Those policies specifically applied to consultants and contractors for Ormat's subsidiaries.  Under those policies and the terms of her Agreement, Gazit owed a duty to Ormat not to disclose to persons outside of Ormat material, nonpublic information without a corporate purpose, including news of a pending or proposed merger or acquisition.

**B.     Gazit's Relationship with Moshe Strugano**

18.     At all times relevant to the facts herein, Gazit and Strugano were close, personal friends.  Gazit and Strugano socialized in person and frequently communicated via WhatsApp and email about their families, travel, and business opportunities.  On at least one occasion, Strugano's wife gifted jewelry to Gazit.

19.     On at least one occasion, Gazit referred an investment opportunity to Strugano, and Strugano requested that Gazit set up a meeting to pursue this opportunity.  In addition, shortly following the Announcement, Strugano recommended Gazit to an executive of a publicly-traded Israeli renewable energy company as a potential board member candidate for that company.  Gazit and Strugano also have a number of overlapping personal and business connections, including Gazit's sister and brother-in-law.

20.     Strugano knew that Gazit worked for Ormat and had access to confidential information about the company's potential business transactions.  Gazit and Strugano were connected on LinkedIn and Facebook, and Gazit's LinkedIn profile listed her "experience" as "Head of Mergers & Acquisitions" at Ormat and her profession as a "Senior M&A consultant."

**C.      Gazit Acquired Material, Nonpublic Information Concerning Ormat's Bid to Acquire U.S. Geothermal**

21.      Ormat initially expressed interest in acquiring U.S. Geothermal in mid-2015, shortly after Gazit began working for Ormat.  The companies were unable to agree to terms for a transaction and discussions ended in 2016.

22.      Ormat reinitiated discussions with U.S. Geothermal in April 2017.  In September 2017, Gazit and one of U.S. Geothermal's directors ("USG Director 1") negotiated preliminary terms of Ormat's proposal to U.S. Geothermal, including acquisition pricing, exclusivity and non-disclosure agreements, and a plan for Ormat to conduct due diligence.  From at least that time forward, Gazit was primarily responsible, along with two Ormat executive officers ("Ormat Executive 1" and "Ormat Executive 2"), for negotiating Ormat's potential acquisition of U.S. Geothermal.

23.      At all times relevant to the facts herein, Gazit knew that Ormat's potential acquisition of U.S. Geothermal and discussions regarding it were confidential.  On or about October 29, 2017, Gazit emailed USG Director 1 regarding due diligence plans and stressed the confidentiality of the process: "*We are keeping it very confidential.  On a need to know basis for the people and the real name is not used.  We call it Project Bono*."  Shortly thereafter, as due diligence commenced on November 2, 2017, Gazit signed an undertaking with Ormat acknowledging the confidential nature of the acquisition discussions and agreeing to strictly maintain the confidentiality of information relating to the potential transaction.

24.      In November and December 2017, Gazit drafted presentations to Ormat's Board on the status of the negotiations with U.S. Geothermal, discussed material terms of a potential agreement with U.S. Geothermal executives and directors, participated in meetings and an on-site visit to U.S. Geothermal's headquarters in Boise, Idaho, attended an in-person meeting with

U.S. Geothermal representatives in New York, and worked with Ormat's executives on the terms

of a proposed merger agreement.  Both companies agreed to discuss potential price adjustments

with their respective boards, and on December 13, 2017, Gazit accepted an invitation to attend a

meeting of Ormat's Board on the afternoon of December 19, 2017 ("December 19 Ormat Board

Meeting").

25.     On December 18, 2017, Gazit received updates from Ormat Executive 1

concerning the acquisition offer price, prepared slides for the following day's board meeting, and

organized a call with two U.S. Geothermal directors for the following morning.  Gazit again

acknowledged the nonpublic nature of these negotiations, writing to Ormat Executive 1, "*I think

from now on it's forbidden to send the real numbers in any email, including presentations to the

board.  We'll say it orally and we'll stay quiet in writing. You never know who's reading and

who's printing, etc. In my opinion this is dangerous.*"

26.     In an early-morning telephone call at approximately 6:30 a.m. (Israel time) on

December 19, 2017, Gazit and Ormat Executive 1 discussed the acquisition price per share with

USG Director 1 and another U.S. Geothermal director ("USG Director 2").  During that call,

USG Director 1 stated that U.S. Geothermal needed an agreement from Ormat at $5.45 per share,

and the parties discussed that their respective boards would meet later that day to vote on

Ormat's offer.

27.     At 2 p.m. (Israel time) that afternoon, Gazit attended the December 19 Ormat

Board Meeting from Ormat's office in Yavne, Israel.  Shortly after the board meeting began,

USG Director 1 sent a WhatsApp message to Gazit: "[*T*]*hink it would be useful if you guys

approved your 5.45 in board today and came back with that - It would give [us] leverage with

board to have an approved firm price.*"  At 2:46 p.m. (Israel time), USG Director 1 again wrote

Gazit that USG Director 2 had spoken to Ormat Executive 2.  He stated, "*we will get that done from our side…*."  Ten minutes later, Gazit responded, "*Ok we are getting there. Thx!!*"

28.     During the December 19 Ormat Board Meeting, Ormat's Board confirmed that its offer to acquire U.S. Geothermal was at $5.45 per share, consistent with earlier discussions with U.S. Geothermal, but it approved the acquisition at a price not to exceed $5.50 to provide some flexibility and avoid the need for the board to reconvene.  Parties from both companies believed that Ormat's acquisition of U.S. Geothermal became highly likely after Ormat's Board approved the $5.45 offer price.

29.     At 3:05:58 p.m. (Israel time), Gazit told USG Director 1 that Ormat's Board had approved the previously discussed offer of $5.45 per share.  She wrote, "*5.45 it is!!! Go get it now on your end!!!*"

30.     Later that evening, USG Director 1 messaged Gazit that the U.S. Geothermal board had approved the $5.45 offer.  He wrote, "[*m*]*oved board meeting earlier and just finished. We are done at 5.45 and board has agreed*."  USG Director 1 and Gazit then confirmed the agreement by telephone.

31.     Over the next month and with delays due to the holidays, Ormat and U.S. Geothermal negotiated non-pricing terms of the merger agreement.  On January 24, 2018, before the U.S. market open, Ormat publicly announced that it had agreed to acquire U.S. Geothermal for $109.9 million, or $5.45 per share.  After the Announcement, the price of U.S. Geothermal stock closed on January 24 at $5.39 per share, an increase of $1.15, or 27.1%, from its previous day close on January 23.

**D.      Gazit Tipped Strugano to Trade U.S. Geothermal Stock**

32.      In the days leading up to the December 19 Ormat Board Meeting, Gazit and Strugano communicated.

33.      For example, on Monday, December 18, 2017, Gazit attempted to call Strugano via WhatsApp and later wrote: "*I'm already busy ... what about tomorrow?!* **We must**." (emphasis added.)  Strugano replied, "*Ok ... I'm in the office from around 10:00 [am]*."

34.      Strugano's calendar shows that he planned to meet or speak with "*Rinat*," Gazit's first name, on December 19, 2017.  After her 6:30 a.m. (Israel time) telephone call with the U.S. Geothermal directors to discuss acquisition pricing, Gazit and Strugano exchanged the following WhatsApp messages:

| Time (Israel) | Event |
|---|---|
| 9:07:33 a.m. | Gazit wrote Strugano, "*Good morning.  Where are you?*" |
| 9:09:35 a.m. | Strugano wrote Gazit, "*I'm leaving Caesarea in 20 minutes*." |
| 9:12:34 a.m. | Strugano wrote Gazit, "*I'll call you when I am on the way*."  Gazit responded, "*Ok*." |

35.      Later that day, Gazit travelled to Ormat's office in Yavne, Israel to attend the December 19 Ormat Board Meeting.  The following sequence of events then happened:

| Time (Israel) | Event |
|---|---|
| 2:00:00 p.m. | Gazit attended the December 19 Ormat Board Meeting; during the meeting, the board voted to approve pricing of the U.S. Geothermal transaction. |
| 3:05:58 p.m. | Gazit communicated Ormat's offer to U.S. Geothermal through a WhatsApp message to USG Director 1: "*5.45 it is!!! Go get it now on your end!!!*" |
| 3:19:23 p.m. | Gazit sent a WhatsApp message to Strugano:  "*We were with [Gazit's child] at Peter Pan.  Great show! Go with the kids*." |
| 3:20:00 p.m. | Strugano made two WhatsApp voice calls to his broker that failed to connect. |
| 3:20:13 p.m. | Strugano responded to Gazit, "*My children were at Beauty and The Beast, ballet show ) :.*" |
| 3:21:00 p.m. | Strugano made two WhatsApp voice calls to his broker that failed to connect. |
| 3:23:00 p.m. | Strugano made a WhatsApp voice call to his broker that failed to connect. |
| 3:23:00 p.m. – 3:28:37 p.m. | At some point during this time, Strugano successfully connected with his broker and placed an order to buy 7,000 shares of U.S. Geothermal. |

9

| Time (Israel) | Event |
|---|---|
| 3:28:37 p.m. | The Bank entered Strugano's initial order to buy 7,000 shares of U.S. Geothermal. The order was executed when the U.S. market opened. |

36.     Upon information and belief, Gazit's December 19, 2017 WhatsApp message about the Peter Pan show was a pre-arranged signal alerting Strugano that Ormat's Board had approved the acquisition and that he should starting buying U.S. Geothermal securities.  The message appears disconnected from any prior line of communication between them, and Gazit sent it shortly after Ormat's Board approved the U.S. Geothermal transaction.  Strugano began trading immediately after receiving the Peter Pan message from Gazit.

37.     Through her December 19, 2017 WhatsApp message and other communications with Strugano, Gazit provided material, nonpublic information to Strugano about the U.S. Geothermal acquisition.  By tipping Strugano with material, nonpublic information about the U.S. Geothermal acquisition, Gazit breached the duty of trust and confidence that she owed to Ormat.

**E.     Strugano Illegally Traded U.S. Geothermal Securities**

38.     By at least December 18, 2017, Strugano was the sole beneficial owner of an account in the name of Liversey Holdings Limited ("Liversey") held at the Bank (the "Account").  At all times relevant to the facts herein, Strugano was a trustee of Liversey, had power of attorney over Liversey's financial accounts, was the beneficial owner of the Account, and was the only person with discretion to make securities trades in the Account.

39.     From December 19, 2017 through January 18, 2018, Strugano paid approximately $2.76 million to purchase 740,650 shares of U.S. Geothermal stock for the Account.  Strugano's purchases of U.S. Geothermal stock were executed through exchanges and other market centers in the United States, as follows:

| Stock Purchase Date | Shares Purchased | Cost of Stock Purchase | Purchase as a % of the Global Trading Volume in U.S. Geothermal Stock |
|---|---|---|---|
| 12/19/17 | 7,000 | $23,489.53 | 19.26% |
| 12/20/17 | 15,000 | $50,080.85 | 35.53% |
| 12/21/17 | 25,000 | $83,249.55 | 17.28% |
| 12/22/17 | 50,000 | $171,515.34 | 41.07% |
| 12/26/17 | 13,650 | $48,119.13 | 33.54% |
| 12/27/17 | 50,000 | $174,870.45 | 18.34% |
| 12/28/17 | 80,000 | $278,143.13 | 46.21% |
| 12/29/17 | 50,000 | $171,660.65 | 45.67% |
| 1/8/18 | 80,000 | $289,411.62 | 30.20% |
| 1/9/18 | 80,000 | $320,867.48 | 35.98% |
| 1/12/18 | 50,000 | $194,980.90 | 66.16% |
| 1/16/18 | 80,000 | $314,823.84 | 62.60% |
| 1/17/18 | 80,000 | $319,194.03 | 65.83% |
| 1/18/18 | 80,000 | $323,299.26 | 59.43% |
| **Total:** | **740,650** | **$2,763,705.76** | **39.23%** |

40.     Strugano first mentioned U.S. Geothermal to his broker on December 19, 2017, when he placed an order to buy 7,000 U.S. Geothermal shares.  From that point forward, Strugano repeatedly told his broker to "*buy more*."  He also expressed urgency to acquire shares, stressing to his broker that "*we don't have time*."

41.     During his buying activity, Strugano communicated via WhatsApp with his broker to direct his stock purchases.  For example:

| Date | Time (Israel) | WhatsApp Message |
|---|---|---|
| December 20, 2017 | 10:26:00 a.m. | Broker: "*Shall we try to buy 9k share today*." |
| | 10:27:00 a.m. | Strugano: "*Yes yes more*." |
| December 24, 2017 | 1:25:00 p.m. | Broker: "*Placed also an order for 26.12 for 50k and had another one for 50k for Friday*." |
| | 2:22:00 p.m. | Strugano: "*More then* (sic) *50K we don't have time*." |
| December 27, 2017 | 10:41:00 a.m. | Broker: "*Yesterday we 'only' bought 13,650 shares…shall we try to buy 50k more today*." |
| | 10:45:00 a.m. | Strugano: "*Yes yes*." |

| Date | Time (Israel) | WhatsApp Message |
|---|---|---|
| December 28, 2017 | 12:36:00 p.m. | Broker: "*Bought 50,000 shares at 3.48869.*" |
| | 12:37:00 p.m. | Strugano: "*Ok let's continue while we can , buy more.*" |
| December 29, 2017 | 12:39:00 p.m. | Broker: "*We bought 80k shares at 3.468118.*" |
| | 12:40:00 p.m. | Strugano: "*Ok keep buying….If there is a change will call you later.*" |
| January 6, 2018 | 6:53:00 p.m. – 6:55:00 p.m. | Strugano: "[P]*lease buy more Monday, we need to buy next week more since price are* (sic) *going down….[Buy] all of next week a little every day….Can [buy] 300-400k.*" |
| January 8, 2018 | 3:47:00 p.m. | Strugano: "*Make sure we are buying 200K today.*" |

42.     As he accumulated large volumes of U.S. Geothermal stock, Strugano asked his broker not to attract attention, writing: "*Keep low profile like you are doing now it's good for me so far, I'm talking about the buying.*"  Then, on January 10, 2018, Strugano instructed: "*Let's stop for now….**Delete all messages**.*" (Emphasis added.)  Two days later, Strugano resumed his aggressive buying.  As the intensity and volume of his purchases increased, on January 17, the broker warned Strugano that he held nearly five percent of U.S. Geothermal's outstanding shares, the threshold for reporting holdings to the SEC.  Strugano immediately responded, "*Ops* (sic)*….no we can't be 5%."*

43.     On Thursday, January 18—less than one week before the Announcement—the broker informed Strugano that there was a significant shortfall of funds available to support his trading in the Account and that Strugano would have to stop buying U.S. Geothermal stock <u>and</u> sell holdings or transfer money to cover the shortfall.  On Friday, January 19, the broker told Strugano that the shortfall was close to $2 million, but Strugano refused to address the shortfall and told his broker that he only needed "*a few days.*"  On Wednesday, January 24, hours before the Announcement, the broker told Strugano that the Bank's credit committee was reviewing his

12

Account.  Strugano begged for more time, writing at 2:33 p.m. and 2:39 p.m. Israel time, "*Ask*

*them to wait a day!!!*" and "*Give me a few hours*."

44.     Less than an hour later, on January 24, 2018 at 3:30 p.m. Israel time (8:30 a.m.

ET), Ormat publicly announced that it planned to acquire U.S. Geothermal.

45.     Over the next two months, Strugano sold all 740,650 U.S. Geothermal shares.  As

a result of these illegal trades, Strugano reaped illicit profits of more than $1.2 million.

**F.      The Bank Investigation**

46.     Although the broker did not initially question Strugano's U.S. Geothermal trades,

he became suspicious as Strugano continued to amass a much larger position.  In response to

questions from the broker about why he was trading U.S. Geothermal securities, Strugano said

that an "Asian friend" had recommended the stock, and he assured the broker that he would not

do anything illegal.

47.     On January 29, 2018, the Bank's compliance department commenced an

investigation of Strugano's trading in U.S. Geothermal and shortly thereafter, the broker

interviewed Strugano.  Strugano claimed:  (i) he did not know anyone working "at or for" Ormat,

(ii) he had no idea a company might buy U.S. Geothermal so soon after building his stake, let

alone a company with any ties to Israel, (iii) Ormat was not, nor has it ever been a client of

Strugano; and (iv) an Asian friend had told him to watch a couple of stocks, including U.S.

Geothermal.

48.     The Bank ultimately discovered that Strugano was connected on Facebook with

Gazit, which contradicted Strugano's claim that he did not know anyone who worked "at or for"

Ormat.  Strugano "unfriended" Gazit in March 2018, after he was interviewed in connection with

the Bank investigation.  In October 2018, the Bank notified Strugano that it was terminating its

relationship with him, and it closed his accounts in November 2018.

## CLAIMS FOR RELIEF

### CLAIM I
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

49.     The SEC realleges and incorporates by reference each and every allegation in

paragraphs 1 through 48, inclusive, as if they were fully set forth herein.

50.     At all relevant times, Ormat's polices and Gazit's Agreement with Ormat required

that she maintain the confidentiality of Ormat's material, nonpublic information and prohibited

her from disclosing this information to others without a corporate purpose.

51.     Gazit tipped her close, personal friend Strugano with material, nonpublic

information about Ormat's potential acquisition of U.S. Geothermal in violation of Ormat's

polices and her Agreement and in breach of the duty she owed to the company.

52.     Gazit knew or recklessly disregarded that the information she tipped was material

and nonpublic and that she had breached her duty by disclosing insider information to Strugano.

53.     Gazit received a personal benefit from her tip of material, nonpublic information

to Strugano, including the benefit of providing a gift of information to a close friend.  Shortly

after the Announcement, Strugano tried to help Gazit obtain a board of directors' position with a

company based in Israel.

54.     Gazit also knew or recklessly disregarded that Strugano would trade on her tip.

55.     Strugano purchased U.S. Geothermal stock based on material, nonpublic

information that he received from Gazit.  Strugano knew or recklessly disregarded that the

information was material and nonpublic.

56.     Strugano knew, was reckless in not knowing, should have known, or consciously

avoided knowing that the tips he received from Gazit were conveyed in breach of her duty or similar obligation arising from a relationship of trust and confidence.

57.     By virtue of the foregoing, Defendants, singly or in concert with others, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated or would have operated as a fraud or deceit upon persons.  By virtue of the foregoing, Defendants, directly or indirectly, violated, and unless enjoined, will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that this Court enter a Final Judgment:

### **I.**

Finding that Defendants violated the provisions of the federal securities laws as alleged herein;

### **II.**

Permanently restraining and enjoining Defendants from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### **III.**

Ordering Defendant Strugano to disgorge all ill-gotten gains, plus prejudgment interest;

**IV.**

Ordering Defendants to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

**V.**

Ordering that Defendant Gazit be prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

**VI.**

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

**JURY DEMAND**

The Commission demands a trial by jury on all claims so triable.

Dated: April 20, 2022                    Respectfully submitted,


/s/ Ann Marie Preissler

Ann Marie Preissler
Joseph G. Sansone
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-5056 (Preissler)
Email: preisslera@sec.gov

Terry Miller*
Frank D. Goldman
Securities and Exchange Commission
Denver Regional Office
Byron G. Rogers Federal Building
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1041
Email:  millerte@sec.gov

*Attorneys for Plaintiff*

*Not admitted in the S.D.N.Y. (*Pro Hac Vice* pending)